IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDY BEIL | : |
| | : |
| v. | : |
| | : NO. 23-CV-2936  SWR |
| MARTIN O'MALLEY, | : |
| Commissioner of Social Security | : |
| | : |

**O P I N I O N**

SCOTT W. REID                                                                                    DATE:  May 13, 2024
UNITED STATES MAGISTRATE JUDGE

Judy Beil brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security affirming the termination of her Disability Insurance Benefits ("DIB").  She has filed a Request for Review to which the Commissioner has responded.  As explained below, I conclude that the Request for Review should be denied and judgment entered in favor of the Commissioner.

I.     *Factual and Procedural Background*

On December 7, 2008, Beil was found disabled as of October 30, 2006, due to a severe back impairment, and awarded DIB benefits.  Record at 165, 199.  Her benefits were continued on January 20, 2011, following a continuing disability review.  Record at 165.  After a second continuing disability review, however, Beil's benefits were terminated as of August 30, 2017, because she twice failed to attend a scheduled medical examination.  Record at 207.

The termination of benefits was upheld on review on the basis of medical evidence of improvement in her condition, although Beil's date of cessation of benefits was amended to October 7, 2020.  Record at 228, 247.  Beil then requested a hearing *de novo* before an ALJ.  Record at 254.  A hearing took place on February 25, 2021.  Record at 118.

On June 11, 2021, the ALJ issued a written decision in which she found Beil no longer disabled.  Record at 173.  On April 28, 2022, however, the Appeals Council remanded the matter to the ALJ.  Record at 195.  The ALJ held a second hearing on September 6, 2022.  Record at 75.  She then issued a second opinion, dated October 20, 2022, in which she again found that Beil's disability had ceased on October 7, 2020.  Record at 49.  This time, the Appeals Council denied Beil's request for review on May 22, 2023, permitting the ALJ's decision to serve as the final decision of the Commissioner of Social Security.  Record at 2.  Beil then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision.  *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To determine whether a claimant who has been receiving benefits continues to be disabled, an ALJ must determine whether the claimant is working.  If she is not, the ALJ follows an evaluation process in which she determines (1) whether the claimant has an impairment or combination which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404,

Subpt. P, Appendix 1 (the "Listings"); (2) whether medical improvement has occurred since the last determination of disability, which is known as the "comparison point decision", or "CPD"; (3) whether the medical improvement is related to the ability to work; (4) whether an exception to medical improvement applies; (5) whether all of the claimant's current impairments are severe, taken in combination; (6) whether the claimant has a residual functional capacity ("RFC") which would permit her to perform her past relevant work; (7) if a claimant cannot return to past relevant work, whether other work exists that she can perform, given her RFC, age, education, and past work experience.  20 C.F.R. § 404.1594(b)(5)(i)-(vii).

III.     *The ALJ's Decision and Beil's Request for Review*

The ALJ determined that Beil was not working during her disabled period.  Record at 52. She then found that, as of October 7, 2020, the date when her disability was found to end, Beil continued to suffer from the severe impairments from which she was found to suffer at the January 20, 2011, continuing disability review – her comparison point decision, or "CPD."  *Id*. These included:  "degenerative disc disease and degenerative joint disease of the lumbar spine with radiculopathy and right lower extremity neuropathy; post laminectomy syndrome status post surgeries, including placement and removal of a neurostimulator; degenerative disc disease of the cervical spine; and fibromyalgia."  *Id*. and Record at 57.

The ALJ also found that Beil suffered from the non-severe impairments of syncope, concussion with vertigo, an abscess, allergic rhinitis, gastric ulcer, epigastric pain, gastroesophageal reflux disease, insomnia, goiter, shingles (herpes zoster), pharyngitis, a history of acute kidney failure, and an ear infection.  *Id*.  She found, however, that none of these impairments, and no combination of impairments, equaled the severity of a listed impairment since October 7, 2020.  Record at 53.

The ALJ went on to determine that, as of October 7, 2020, the medical evidence supported a finding that there had been medical improvement in the form of a decrease in the severity of Beil's impairments since the CPD. Record at 55. She found that this medical improvement was related to Beil's ability to work because it resulted in an improved RFC. Record at 56.

According to the ALJ, Beil was limited to light work since October 7, 2020, with the following limitations:

> The claimant is limited to no more than occasional postural maneuvers, such as balancing, stooping, and climbing on ramps and stairs, but must avoid occupations that require climbing on ladders, ropes, or scaffolds, or kneeling, crouching, or crawling. The claimant must avoid occupations that require pushing or pulling with the lower extremities to include the operation of pedals. The claimant is limited to occupations that require no more than occasional overhead reaching or pushing and pulling with the upper extremities, to include the operation of hand levers or overhead work. The claimant must avoid concentrated prolonged exposure to temperature extremes, or extreme dampness and humidity. Lastly, the claimant is limited to occupations which do not require exposure to vibration or to hazards, such as dangerous machinery and unprotected heights.

*Id.*, and Record at 57.

The ALJ concluded that Beil had no past relevant work. Record at 63-4. However, in reliance upon the testimony of a vocational expert who appeared at the hearing, she found that Beil could perform such jobs as picker/packer, garnisher, or bakery worker. Record at 65. Even if restricted to sedentary work, Beil could work as a final assembler, sorter, or jewelry stone setter. *Id*. On the basis of the foregoing, the ALJ decided that Beil's disability ended on October 7, 2020, and that she had not become disabled again since that date. *Id*.

In Beil's *pro se* Request for Review, she raises the following issues:

1. Her benefits were terminated due to her having worked, whereas the reports of her working were the result of fraudulent use of her Social Security Number;

4

2.  Federal employees mishandled identity fraud that occurred in her case, causing her harm which entitles her to recovery under the Federal Tort Claims Act;

3.  Documents included in the file indicating that Beil was incarcerated in Florida were not her records, so her benefits should not have been terminated;

4.  In 2007, she was awarded benefits as a result of a failed disc replacement surgery; the disc has been recalled, but remains in her spine as it would be dangerous to remove: "The disc has a documented history of causing problems such as parasthesia, kidney and intestinal failures, damages to the central spinal cord which caused 8 Tarlov cysts around the prosthesis, and further caused cerebral hypoxic seizures;"

5.  She suffers from seizures, "the conditions and frequency" of which have increased since the original cessation of benefits;

6.  The ALJ's two decisions misquoted the vocational expert testimony.

ECF Doc. No. 17.[1]

IV.    *Discussion*

    A.    *Identity Theft*

At her February 25, 202, hearing, Beil told the ALJ that she believed her benefits were terminated because her identity was stolen by someone in the office of her pain specialist, and her Social Security number fraudulently used in some tax filings in 2016 and 2017. Record at 142. The ALJ explained to her that IRS reports did not show her as earning substantial gainful income in those years so that the purported identify theft would not interfere with her ability to obtain benefits in the event that she was found disabled. Record at 143-4.

The ALJ also explained in her October 20, 2022, decision that "the reason for the claimant's cessation is documented in the record as a medical improvement and not due to IRS

---

[1] It should be noted that the ALJ clearly explained to Beil at the outset of both the February 25, 2021, and the September 6, 2022, hearings that she was entitled to representation at the hearing, that the hearing could be postponed to permit her to obtain it, that most counsel would work on commission, and that she might be able to obtain representation at no cost. Record at 80-81, 125. However, Beil told the ALJ at both hearings that she chose to waive her right to representation, and proceed unrepresented. Record at 81-2, 126.

wage information." Record at 55. She specified that the only issue before her was whether Beil's disability had ended. *Id*.

Further, the record shows that Beil's benefits were initially discontinued because she failed to appear for two scheduled medical examinations. Record at 207. Upon reconsideration, and after a physical examination took place, the discontinuation of benefits was affirmed because the medical evidence showed Beil "ha[d] the residual functional capacity to perform a significant number of jobs in the national economy." Record at 247. At that time, it was specifically found that she was "not engaging in substantial gainful activity." Record at 244. In any event, as noted above, the ALJ found Beil to have no past relevant work. Record at 63-4. Therefore, whatever the facts may be regarding identity theft, it clearly had nothing to do with the ALJ's decision that medical improvement justified the cessation of Beil's benefits.

      B.     *The Federal Tort Claims Act*

Any claims Beil may have under the Federal Tort Claims Act, 28 U.S.C. §2671, *et seq*., cannot be resolved here. This is an appeal of an unfavorable decision of the Commissioner of Social Security, brought under 42 U.S.C. §405(g). The court's jurisdiction in such a case is limited to deciding whether the Commissioner's decision was supported by substantial evidence. 42 U.S.C. §405(g).

      C.     *Incarceration*

The document which is said to have indicated that Beil was incarcerated in Tallahassee, Florida, was redacted from the record at the direction of the ALJ. Record at 86-88, 423. There is no evidence that it was considered in any way by the ALJ in her decision.

D. *Beil's Back Impairment*

More substantively, Beil argues that her back impairments remain as serious as they ever were, and have caused her additional health problems over the years. As summarized by the ALJ:

> [T]he claimant was in a car accident in 1999, which resulted in replacement of her L5-S1 disc in 2008. Following the same the claimant was noted to have ganglion nerve damage, as such, in 2009 she underwent an L5-S1 spinal fusion. As she reported continued pain, and had positive findings on physical examination, in 2010 a neurostimulator was implanted. Due to problems stemming from the neurostimulator, it was removed in April of 2013, and subsequently, in May 2013, she had an L4-L5 partial laminectomy performed.

Record at 55, *citing* Record at 823 (January 20, 2011, report from Louis B. Bonita, MD); 826 (October 30, 2019 report from consulting examiner Marielle Stone, M.D.), 1074 (June 6, 2013, treatment note from Comprehensive Pain Centers: "Foramenotomy, laminotomy, partial facetectomy with decompression of nerve root, L5-S1 5/2013"), 1076 ("she had SCS removed"), and 1155 (surgical record of April 22, 2013: "Operation performed: removal of dual spinal cord stimulator").

Beil's complicated medical history of injury to her lumbar spine and associated surgeries underlie the findings of disability in 2008 and 2011. However, as the ALJ went on to discuss in her decision, physical examinations and objective testing after 2013 were largely benign. Record at 55.

A CT scan of Beil's lumbar spine taken on March 22, 2013, shortly before her lamination surgery, showed no herniation in any lumbar disc, and no stenosis at L5-S1, where the disc had been replaced with a prosthesis. Record at 1247. The only negative finding was of "mild spondylotic changes related to epidural nerve stimulator unit placement." Record at 1248. The nerve stimulator was accordingly removed. Record at 1155.

When Dr. Stone examined Beil on October 30, 2019, she found that Beil had a normal gait and stance. Record at 828. She could walk on her heels and toes without difficulty, and squat fully. *Id*. She was able to rise from a chair, and get on and off the examination table without assistance. *Id*. Although Beil had "mild tenderness" over the lumbar spine, and six positive trigger points (all in the lower back area), her joints were stable and without evident deformity, and straight leg raising, which tests for radiculopathy, was negative bilaterally, both seated and standing. Record at 829. Beil had full strength in all extremities, though reduced reflexes, and reduced sensation in the right leg. *Id*. No muscle atrophy was present. *Id*. Her hand and finger dexterity was intact, and she had full grip strength. *Id*. Her range of motion was within normal limits in all respects. Record at 837-840.

Dr. Stone opined that Beil could continuously lift or carry ten pounds, and frequently lift or carry up to twenty pounds, with occasional lifting and carrying of up to 50 pounds. Record at 831. She could sit for two hours at a time, up to a total of eight hours. Record at 832. Similarly, she could stand or walk for only one hour at a time, but could stand for up to six hours, and walk for up to five hours in an eight-hour workday. *Id*. According to Dr. Stone, Beil could reach, handle, finger, feel, push or pull continuously, with either arm. Record at 832. Although she could never balance or climb ladders, she could occasionally kneel, crouch, or crawl, and could frequently climb stairs, and stoop. Record at 833. She could perform all activities included on the assessment form, such as shopping, traveling alone, and walking one block at a reasonable pace. Record at 834.

A second consultative examination by Melita Konecke, M.D., which took place on March 9, 2021, also resulted in findings of a normal gait and stance. Record at 1165. Beil was at that time also able to walk on her heels and toes without difficulty, and to squat fully. *Id*. Again,

straight leg raising was negative, both seated and supine "with no pain elicited in either position." Record at 1166. Beil's joints were stable and nontender, and she had full strength in both upper and lower extremities. *Id*. This time, her reflexes were also normal. *Id*. There was no muscle atrophy. *Id*. Again, her range of motion was unlimited. Record at 1174-1177.

Dr. Konecke interpreted an x-ray of Beil's right hip as showing no acute bony abnormality, and an x-ray of the lumbar spine as showing no acute fracture or subluxation. Record at 1167. Although Dr. Konecke does not give the date the x-rays were taken, it is likely that they were those ordered by the ALJ on February 25, 2021, and were therefore very recent. Record at 157.

According to Dr. Konecke, Beil could continuously lift or carry up to twenty pounds, and occasionally lift up to 50. Record at 1168. She was unlimited in sitting, standing, walking, reaching, and in other functions of the upper extremities. Record at 1169, 1170. Beil could be exposed to unprotected heights frequently, and had no other environmental limitations. Record at 1171. Like Dr. Stone, Dr. Konecke did not find Beil limited in any of the indicated activities. Record at 1173.

Given the foregoing, the ALJ was entitled to conclude that Beil's claims regarding the intensity of her symptoms were inconsistent with the record as a whole. Her conclusion that Beil had experienced medical improvement since 2011 was therefore supported by substantial evidence.

As above, Beil argues that the ALJ should have considered medical problems caused by the back impairment, specifically, paresthesia, kidney and intestinal failures, Tarolov cysts in the lumbar spine around the prosthesis, and cerebral hypoxic seizures. The ALJ included "history of acute kidney failure" in her review of Beil's non-severe impairments. Record at 52. Yet, neither

Beil nor the Commissioner cite to any evidence in the record of diagnosis or treatment of kidney failure (or intestinal failure).  No such disorder is mentioned on problem lists created by Beil's medical providers.  Record, e.g., 891(February 4, 2017), 958 (October 25, 2015), 259 (February 7, 2021).  St. Luke's Hospital, where Beil claims to have been treated by a liver and kidney specialist, had no records for her.  Record at 300, 1266.

With no evidence of a kidney disorder in the relevant period, i.e., between the 2011 CPD and the 2020 cessation of benefits, the ALJ did not err in finding it non-severe.  Similarly, Tarlov cysts are mentioned only in a treatment note from October 16, 2006, two years before Beil's first back surgery.  Record at 1238.  There is no indication that they were present in the relevant period, and the ALJ did not err in failing to mention them.

Nor is there evidence that Beil was diagnosed with seizures.  Although emergency room records from February 7, 2021, state "Pt came in EMS from home reporting she had a seizure this morn at around 6 a.m.", the eventual diagnosis was "syncopal episode, no seizure."  Record at 980.  In any event, Beil told the emergency room staff that she had experienced only one previous syncope episode, a year earlier.  *Id*.  Whatever the cause of Beil's syncope episodes, therefore, she has not shown that they could meet the one-year duration period during the relevant time period.

Finally, paresthesia is simply "the feeling of tingling, numbness or 'pins and needles.'" Http://my.clevelandclinic.org>24932-parasthesia.  Given that Beil has been found to have full strength in all extremities and a full range of motion, even in her spine, the fact that she experienced paresthesia would not affect the ALJ's conclusion that she was not disabled.  Indeed, Dr. Stone noted that Beil had reduced sensation in her right leg, but nevertheless found that she could perform work-related functions.  Record at 829.

E.  *Seizures*

As noted, there is no evidence that Beil was ever diagnosed with a seizure disorder. Record at 980. She did experience a fall and a concussion on August 31, 2019, and was seen at Bluegrass Community Hospital, in Kentucky. Record at 928. At that time, she had "no history of falls." Record at 929. She underwent a CT scan of her head, among other tests, and it was normal. Record at 933, 937. She was diagnosed simply with a head abrasion and concussion. Record at 934.

Two months later, Beil told consulting examiner Dr. Stone that she experienced "daily dizziness" since that fall. Record at 826. As noted above, however, Beil told the emergency room staff on February 7, 2021, that she had only experienced one prior incident of falling. Record at 980. She said nothing about daily dizziness. *Id*. At that time, she was diagnosed with "syncopal episode, no seizure." *Id*. Thus, there is no merit to Beil's claim that the ALJ erred in her treatment of this alleged seizure disorder, and since Beil only suffered from one recorded episode of syncope in the relevant period, there can be no claim that the ALJ wrongfully failed to find it a severe impairment.

F.  *The ALJ's Treatment of the Vocational Expert's Testimony*

Finally, Beil claims that "the ALJ's two decisions misquoted the vocational expert testimonies in both hearings and she failed to address the questions related to this fact when questioned by Beil's appeals." ECF Doc. No. 17 at ¶3. She does not specify what testimony she claims was misquoted. However, in her appeal of the ALJ's October 20, 2022, decision, she wrote that the ALJ wrongly failed to rely on the vocational specialist's testimony in response to the third hypothetical posed to him, which "was cervical and lumbar together." Record at 305.

In fact, the ALJ's third hypothetical question involved an individual who would be off-task more than 30% of the workday "due to severe back and neck pain as well as from headaches." Record at 111, 112. Clearly, the crucial issue was the time off-task, and not the source of the putative pain. (The ALJ acknowledged that Beil had degenerative disc disease in both the lumbar and cervical spine; Record at 52, 57).

The vocational expert responded that there would be no work for such a person. Record at 111. Beil has not, however, shown or even argued that she is distracted to this extent. Therefore, the ALJ did not err in declining to rely upon this vocational expert testimony.

V.      *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be denied, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE